## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PRO PUBLICA, INC. and
VIRGINIAN-PILOT MEDIA COMPANIES, LLC

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS

Defendant.

Civil Action No. _____

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Pro Publica, Inc. ("ProPublica") and the Virginian-Pilot Media Companies, LLC ("The Virginian-Pilot") (collectively, "Plaintiffs")—both Pulitzer-prize winning news organizations—and their reporters Charles Ornstein and Mike Hixenbaugh have sought the disclosure of records from defendant United States Department of Veterans Affairs ("VA") since May 2015 concerning Agent Orange and its effect on Vietnam veterans and their children.  The records, requested under the Freedom of Information Act ("FOIA"), relate, in part, to communications involving various researchers, leaders, and office holders at the VA.  One of those individuals is David J. Shulkin, MD, the current Under Secretary for Health at the VA who was just nominated (on January 10, 2017) by President-elect Trump to be the next Secretary of Veterans Affairs.

Plaintiffs' efforts to have the VA process their FOIA requests and release responsive records essentially have met a brick wall.  Repeated pleas to the VA to process two FOIA requests, which now have been pending for 618 days and 506 days, respectively, have been utterly disregarded.  Indeed, ProPublica and The Virginian-Pilot have done everything short of turning cartwheels in front of VA's headquarters to draw attention to these requests.

Unfortunately, the VA apparently has deemed inconsequential the very consequential fact that—as ProPublica's President argued to VA's Office of General Counsel ("OGC") over nine months ago—"[t]hese requests are of paramount importance to hundreds of thousands, perhaps millions of Vietnam era veterans, some of whom are being diagnosed daily with illnesses that are presumed to be connected with their Vietnam service."  *See* Declaration of Charles Ornstein ("Ornstein Decl.") Exhibit 7.

The FOIA statute requires that "each agency, upon any request for records . . . shall make the records *promptly* available to any person."  *See* 5 U.S.C. § 552(a)(3)(A).  And a "person primarily engaged in disseminating information," i.e. a member of the press, is entitled to request and receive special, expedited treatment for a FOIA request when there is "urgency to inform the public concerning actual or alleged Federal Government activity."  *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).  Yet here, neither "prompt" nor "expedited" processing of Plaintiffs' FOIA requests has occurred and the specter of potential bad faith unavoidably looms over this matter.  Something is clearly amiss when members of prominent news organizations tell the federal government: "[f]rom our end, frankly, this systematic inaction appears to us a lot like a cover up"; it "feel[s] a lot like an intentional effort to stonewall"; and "[e]ither the VA is withholding the documentation, or it has destroyed the government records."  *See* Ornstein Decl. Exhibits 7, 13, & 22.

As set forth herein, there is urgency to the disclosure of the requested records.  With a new President taking office on January 20, 2017, the administration will once again begin considering new rules concerning benefits, such as disability compensation, for individuals with ailments or disabilities linked to exposure to Agent Orange.  Not surprisingly, the VA put all such efforts on "hold" several months ago, given the expected reassessment of priorities by a

new administration.  Moreover, the views of Dr. Shulkin concerning Agent Orange have gained added significance since his nomination to be the next leader of the VA.

### STATEMENT OF FACTS

The First FOIA Request

Plaintiffs' first FOIA request at issue in this case was submitted to the VA on May 12, 2015 ("First FOIA Request").  *See* Ornstein Decl. Exhibit 1.  It was redirected to the Veterans Health Administration ("VHA") and the Office of Congressional and Legislative Affairs ("OCLA"), both part of the VA, and assigned tracking numbers 15-05014-F and 15-05015-F, respectively.  *See* Ornstein Decl. at ¶ 11, Exhibit 2.  In the ***twenty months*** since submission, there have been no fewer than ***thirty-two emails and letters*** between Plaintiffs and the VA evidencing the untimely processing of the request.[1]  Not a single page has been produced to date. *See* Ornstein Decl. at ¶ 14.  VHA has not provided *any* response determination.  *Id.*  OCLA provided a response determination that "the documents [Plaintiffs] seek . . . were not maintained in [OCLA]."  *See* Ornstein Decl. Exhibit 12.  But after ***fifteen months*** on administrative appeal to OGC, the matter was remanded to OCLA to issue a "superseding agency decision" and also to "refer" the request to "other VA offices that may have responsive information."  *See* Ornstein Decl. Exhibit 14.

Frustrated with VHA's inaction, Plaintiffs requested expedited processing with respect to the First FOIA Request on January 30, 2016 ("what can be done to expedite this [FOIA] request?") and again on May 25, 2016 ("ask[ing] -- as we approach our deadline to report on

---

[1] There have been communications on: May 12, 2015; May 19, 2015 (twice); Aug. 25, 2015; Sept. 1, 2015; Jan. 11, 2016; Jan. 22, 2016; Jan. 30, 2016; Feb. 2, 2016 (twice); Feb. 4, 2016; Feb. 5, 2016; Feb. 15, 2016; Feb. 17, 2016; Mar. 24, 2016; Apr. 6, 2016; May 25, 2016; May 26, 2016; June 3, 2016; June 7, 2016; June 10, 2016; July 19, 2016 (twice); Aug. 16, 2016; Aug. 17, 2016; Sept. 13, 2016; Sept. 14, 2016 (twice); Sept. 15, 2016; Oct. 25, 2016 (twice); Dec. 8, 2016; and Dec. 9, 2016.  *See* Ornstein Decl. Exhibits 2-4 & 7-14.

these important matters of public interests -- that [VHA] would give consideration to completing these requests quickly, especially [the First FOIA Request which is] now more than a year old."). *See* Ornstein Decl. Exhibits 5, 8.  VHA did not act upon the requests for expedited processing.

Plaintiffs even sought the assistance of a "facilitator" at the Office of Government Information Services ("OGIS"), which serves as the Federal FOIA Ombudsman.  *See* Ornstein Decl. Exhibit 5.  Ultimately, however, Plaintiffs were informed that "[u]nfortunately, OGIS has no investigatory or enforcement power," and so its intervention—which merely checked on the status of processing the First FOIA Request—was useless.  *See* Ornstein Decl. Exhibit 6.

The Second FOIA Request

Plaintiffs' second FOIA request disputed in this case was submitted to the VA on September 1, 2015 ("Second FOIA Request").  *See* Ornstein Decl. Exhibit 15.  Like the previous request, it was redirected to, among others, VHA, the Veterans Benefits Administration ("VBA"), the Office of Policy and Planning ("OPP"), and the Office of Inspector General ("OIG"), all part of the VA, and assigned tracking numbers 15-07638-F, 15-07639-F, 15-07641-F, and "unassigned," respectively.  *See* Ornstein Decl. at ¶ 12, Exhibit 16.  In over **sixteen months** since then, there have been no fewer than **seventeen emails and letters** between Plaintiffs and the VA evidencing the untimely processing of the Second FOIA Request.[2]  VHA provided a "partial initial agency decision," producing 14 pages in part while referring another 12 pages, produced fully redacted, for "a direct response from VBA on their release

---

[2] There have been communications on: Sept. 3, 2015 (twice); Sept. 24, 2015; Jan. 30, 2016; Feb. 2, 2016 (twice); Feb. 4, 2016; Feb. 5, 2016; Apr. 6, 2016; May 25, 2016; May 26, 2016; July 7, 2016; July 13, 2016; Aug. 3, 2016; Aug. 26, 2016; and Oct. 28, 2016 (twice).  *See* Ornstein Decl. Exhibits 4, 7, 8, 16, 17, 20, 22, & 24-26.

determination."[3]  *See* Ornstein Decl. at ¶ 15, Exhibit 25.  However, as of its last communication a few months ago, VHA's search "is not yet completed."  *See* Ornstein Decl. at ¶ 15, Exhibit 26. In addition, VBA, OPP, and OIG have neither made a response determination nor produced any records in response to the Second FOIA Request.  *Id.* at ¶ 15.  Although expedited processing was requested on May 25, 2016, that request was not acted upon by any of VHA, VBA, OPP, or OIG.  *See* Ornstein Decl. Exhibit 8.

Desperate, Plaintiffs again turned to OGIS to intervene with respect to processing the Second FOIA Request.  *See* Ornstein Decl. Exhibit 21.  That effort again was in vain; having checked on the status of processing, OGIS reported that VHA "has yet to receive all of the records you seek" and then stated that "we consider this matter closed."  *See* Ornstein Decl. Exhibit 23.

Lack of Assistance from Senior Leadership at VA

ProPublica's President Richard J. Tofel even sent a letter to Richard J. Hipolit, the VA's Deputy General Counsel, concerning the VA's "systemic inaction" with respect to the First and Second FOIA Requests and urging the VA's "adherence to both the spirit and letter of FOIA." *See* Ornstein Decl. Exhibit 7.  There was no response from VA.  *Id.* at ¶ 25.

Another letter, next from ProPublica's senior reporter Charles Ornstein to LaVerne H. Council, Assistant Secretary for Information Technology and Chief Information Officer, Office of Information Technology at the VA as well as to Leigh A. Bradley, VA's General Counsel, sought assistance with the "delays and lack of responsiveness" by VA in connection with the Second FOIA Request.  *See* Ornstein Decl. Exhibit 22.  It was simply acknowledged by a

---

[3] In addition, response determinations for the Second FOIA Request were received from the Office of the Secretary of Veterans Affairs ("OSVA") (producing 67 pages) and OCLA ("the documents you seek . . . were not found in [OCLA]").  *See* Ornstein Decl. Exhibits 18, 19.

Government Information Specialist and docketed as a FOIA "appeal."   *See* Ornstein Decl. Exhibit 24.   There has been no other communication from VA specifically about Ornstein's letter.  *Id.* at ¶ 42.

An email to VA's OGC from Mike Hixenbaugh at The Virginian-Pilot, in exasperation, appealing OCLA's failure to produce any records, laid bare the distrust created by VA's lack of attention to these FOIA requests:   "Either the VA is withholding the documentation, or it has destroyed the government records."   *See* Ornstein Decl. Exhibit 13.   He continued: "If the records are held in an office other than [OCLA], I request copies.   If the correspondence has been disposed of, I request a written statement explaining why and under whose authority the records were destroyed."   *Id.*

<u>VHA's Stonewalling</u>

The most egregious stonewalling among VA's dilatory components has been committed by VHA.   It simply is inconceivable that VHA has only 26 pages of records in its possession, custody, or control concerning Agent Orange and its effect on Vietnam veterans and their children.   *See* Ornstein Decl. at ¶ 15.   The First FOIA Request seeks correspondence, memoranda, and reports regarding Agent Orange and dioxin, and its effects on veterans and/or their offspring, beginning January 1, 2009 to and from Drs. Han K. Kang and Michael Peterson, as well as Congressional correspondence.   *See* Ornstein Decl. at ¶ 11, Exhibit 1.   These individuals were two of VA's foremost experts on Agent Orange.   *See, generally,* ECF No. 1 (Complaint) at ¶¶ 13-21.   Dr. Kang is the former director of the VA's War Related Illness and Injury Study Center ("WRIISC"), which is funded by VHA.   *Id.* at ¶ 13.   The WRIISC Director reports to the Chief Consultant, Post-Deployment Health within the Office of Public Health

("OPH") of VHA for all programmatic and policy issues.  *Id.*  Dr. Peterson was formerly the Chief Consultant, Post-Deployment Health within VHA's OPH.  *Id.* at ¶ 16.

The Second FOIA Request seeks correspondence, memoranda, and reports regarding Agent Orange and dioxin, and its effects on veterans and/or their offspring, beginning January 1, 2009, to and from various office holders at the VA including, *inter alia*, the Under Secretary for Health.  *See* Ornstein Decl. at ¶ 12, Exhibit 15.  The Under Secretary for Health is the "Chief Executive of [VHA]."   *See*  http://www1.va.gov/directory/guide/manager.asp?pnum=30282. President-elect Donald Trump announced on January 11, 2017 that the current Under Secretary for Health, Dr. David J. Shulkin, is his nominee to be the next Secretary of the VA.  *See* https://greatagain.gov/shulkin-302876b6595a#.d8h1z1g6y.  Dr. Shulkin would be the first non-veteran to lead the VA.  *See* https://www.propublica.org/article/the-chosen-who-trump-is-putting-in-power.

<u>Status of Processing the First and Second FOIA Requests</u>

In sum, since May 12, 2015, the VA has failed to produce *any* records in response to the First FOIA Request, with VHA not even providing a response determination stating that it gathered and reviewed responsive documents, explaining the scope of the documents it intends to produce and withhold, or informing Plaintiffs of their right to appeal.  *See* Ornstein Decl. at ¶ 14. Responses remain woefully overdue from both VHA and OCLA.

In sum, since September 1, 2015, the VA's VBA, OPP, and OIG have neither made a response determination nor produced any records to Plaintiffs in response to the Second FOIA Request.  *Id.* at ¶ 15.  Moreover, VHA has neither completed its response determinations nor

completed its record productions to Plaintiffs in response to the Second FOIA Request.[4]  *Id.*

Plaintiffs have not been informed that the VA components gathered and reviewed all responsive

documents, nor have Plaintiffs been provided an explanation of the scope of the documents each

component intends to produce and withhold or Plaintiffs' right to appeal.  *Id.*

Neither of the First and Second FOIA Requests have been "promptly" processed, let

alone processed in an "expedited" manner.  *See, e.g.,* Ornstein Decl. at ¶ 73.

## ARGUMENT

There are two issues raised in this motion.  ***First***, VA's processing of Plaintiffs' FOIA

requests has been subject to unreasonable delay, having been neither "prompt" nor "expedited."

At this point, processing of the First and Second FOIA Requests is a matter of urgency for

Plaintiffs and the VA should be ordered to quickly act.  ***Second***, because of VA's failure to

exercise due diligence with respect to processing Plaintiffs' FOIA requests, VA should be

enjoined from using a temporal limitation for its searches for responsive records, i.e. a "cut-off

date," that is any earlier than the date of the Complaint in this action.  Plaintiffs' proposed cut-off

date is reasonable under these circumstances of inaction by the VA.

### A.    Legal Standards

"This court may issue a preliminary injunction only when the movant demonstrates: (1) a

substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the

injunction is not granted; (3) that an injunction would not substantially injure other interested

parties; and (4) that the public interest would be furthered by the injunction."  *Elec. Privacy Info.*

*Ctr. v. Dep't of Justice ("EPIC I")*, 416 F. Supp. 2d 30, 35-6 (D.D.C. 2006).  "Regardless of

---

[4] VHA has produced 26 pages—12 pages of which were entirely redacted and forwarded to VBA for a response determination (which Plaintiffs have not received)—and stated that its "search is not yet completed."  *See* Ornstein Decl. at ¶ 15, Exhibits 25, 26.

whether [a] sliding scale framework applies" in balancing the relative strength of showings for the factors, "it remains clear that a movant must demonstrate irreparable harm, which has 'always' been '[t]he basis of injunctive relief in the federal courts.'" *Newark Pre-School Council, Inc. v. Dep't of Health & Human Svcs.*, No. 1:16-cv-01024 (APM), 2016 U.S. Dist. LEXIS 110442, at *11 (D.D.C. Aug. 19, 2016) (citations omitted). "[I]njunctions issued by federal courts should be narrowly tailored to remedy the harm shown." *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990) (citation omitted).

Pursuant to the FOIA statute, "each agency, upon any request for records . . . shall make the records *promptly* available to any person." 5 U.S.C. § 552(a)(3)(A) (emphasis added). "Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds." *Nat'l Whistleblower Center v. Dep't of Health and Human Svcs.*, 849 F.Supp.2d 13, 25 (D.D.C. 2012) (citations omitted). "Although [an] agency may desire to keep FOIA requests bottled up in limbo for months or years on end, the statute simply does not countenance such a system." *Citizens for Responsibility & Ethics in Wash. ("CREW") v. FEC*, 711 F.3d 180, 186-87 (D.C. Cir. 2013). "'[U]nreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses.'" *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988), quoting *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982). Moreover, "[t]he FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Id.* at 494 (citation omitted). Thus, "[c]ourts have the authority to impose concrete deadlines on agencies that delay the processing of [FOIA] requests meriting expedition . . . and support the contention that courts have the authority, and perhaps the obligation, to scrutinize closely agency delay." *EPIC I*, 416 F. Supp. 2d at 38 (citations omitted).

"FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *CREW*, 711 F.3d at 188. "[I]n order to make a 'determination' . . . the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.*

The FOIA statute gives the Court broad powers and forces a defendant agency to justify its conduct:

> [T]he district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter *de novo*, . . . and the burden is on the agency to sustain its action.

*See* 5 U.S.C. § 552(a)(4)(B) (emphasis added).

When a plaintiff is "primarily engaged in disseminating information" and there exists an "urgency to inform the public concerning actual or alleged Federal Government activity," expedited processing is appropriate. *See* 5 U.S.C. § 552(a)(6)(E)(i) & (v)(II); 38 C.F.R. § 1.556(d)(1)(ii); *see also Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005); *Washington Post v. Dep't of Homeland Security*, 459 F. Supp. 2d 61 (D.D.C. 2006) (granting the newspaper's motion for a preliminary injunction ordering expedited processing), *vacated on consent motion as moot*, No. 06-5337, 2007 U.S. App. LEXIS 6682 (D.C. Cir. Feb. 27, 2007) (unpub.). Moreover, expedited processing is warranted when "[t]he failure to obtain the requested records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual" or when "[t]here is widespread and exceptional interest in which possible questions exist about the government's

integrity which affect public confidence." *See* 38 C.F.R. § 1.556(d)(1)(i) & (iv). "Agency action to deny or affirm denial of a request for expedited processing . . . and failure by an agency to respond in a timely manner to such a request shall be subject to judicial review." *See* 5 U.S.C. § 552(a)(6)(E)(iii).

As for the date range to be searched for responsive records, "a temporal limit pertaining to FOIA searches . . . is only valid when the limitation is consistent with the agency's duty to take reasonable steps to ferret out requested documents." *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983), *vacated in part in other respects*, 711 F.2d 1076 (D.C. Cir. 1983) (per curiam); *concur Public Citizen v. Dep't of State*, 276 F.3d 635, 644 (D.C. Cir. 2002), *aff'd in relevant part and rev'd on other grounds*, 276 F.3d 634 (D.C. Cir. 2002) (the proposition that a "time-of-request cut-off date" is always reasonable has been "expressly rejected"). The burden of establishing the reasonableness of temporal limitations on a search lies with the agency. *McGehee*, 697 F.2d at 1101.

When there has been a lengthy passage of time between the date the FOIA request was submitted to the agency and the date when the agency finally issues a response "determination," and ultimately produces documents, the propriety of a "time-of-request cut-off date" is viewed with great skepticism. *Id.* at 1103-04. Ordinarily a "determination"—including, *inter alia*, gathering and reviewing the requested documents—must be completed by the agency within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i). "Unusual circumstances" allow that completion date to slip by 10 extra working days. 5 U.S.C. § 552(a)(6)(B)(i). Finally, only if an "agency is exercising due diligence in responding to the request" may a court find that "exceptional circumstances exist" warranting that the agency be permitted "additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i). The FOIA statute expressly states that

"'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii).

### B.    Plaintiffs Are Entitled to a Preliminary Injunction

The VA's failure to process Plaintiff news organizations' First and Second FOIA Requests—which have been pending for 618 days and 506 days, respectively—is unlawful.  All four prongs of the preliminary injunction standard are clearly met and preliminary injunctive relief should be granted.

### 1.    Plaintiffs Are Likely to Prevail on the Merits.

#### a)    VA has not "promptly" processed the First and Second FOIA Requests.

It would be objectively unreasonable for VA to contend that the endless delay it has effected with respect to processing the First and Second FOIA Requests satisfies the FOIA statute's mandate that it "shall make [requested] records *promptly* available to [Plaintiffs]." *See* 5 U.S.C. § 552(a)(3)(A) (emphasis added).  This is not a case in which a plaintiff seeks relief because of an agency merely "blowing the 20-day deadline" to make its response "determination." *See Elec. Privacy Info. Ctr. v. Dep't of Justice [EPIC II]*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014).  This **is** a case in which the 20 working day deadline has passed *twenty times over* for the First FOIA Request and *sixteen times over* for the Second FOIA Request.  No interpretation of the term "promptly" in the FOIA statute could encompass such a lengthy period of time without providing a response "determination" under *CREW* and making tangible progress in completing the processing of the First and Second FOIA Requests by reviewing and producing responsive, non-exempt records.  The VA simply cannot "process the request[s] at its leisure, free from any timelines." *CREW*, 711 F.3d at 186.

Regarding the First FOIA Request, which has been pending since May 12, 2015, both VHA and OCLA have utterly violated the timeliness requirement of Section 552(a)(3)(A).  *See* Ornstein Decl. at ¶¶ 11, 13, 14.  VHA has neither provided a response "determination" satisfying the *CREW* standard nor produced a single page over the course of more than twenty months and despite the exchange of at least thirty-two emails and letters with Plaintiffs who have repeatedly sought prompt processing.  *See* n. 1, *supra*; Ornstein Decl. at ¶¶ 14, 17.  Relying on a single FOIA officer who has been burdened with "other office priorities" and "other assigned priorities," *see* Ornstein Decl. Exhibits 10 and 11, VHA has failed to fulfil its statutory obligations under FOIA.  As for OCLA—which issued a response determination stating that it had not "maintained" any documents responsive to the request—VA's OGC held on appeal that it could not confirm "the reasonableness of the search [by OCLA] for responsive information" and nothing further has occurred.  *See* Ornstein Decl. Exhibits 12, 14.

As for the Second FOIA Request, which was submitted to VA over sixteen months ago, on September 1, 2015, this request is almost as stale as Plaintiffs' first request and VA's statutory obligation under Section 552(a)(3)(A) to "promptly" disclose responsive records clearly has not been met.  *See* Ornstein Decl. at ¶¶ 12, 13, 15.  VHA, VBA, OPP, and OIG all have failed to exercise required diligence with respect to this Second FOIA Request, despite Plaintiffs' repeated attempts to gain prompt processing.  *See* n. 2, *supra*; Ornstein Decl. at ¶ 15, 17.  After producing 14 pages in part, and fully redacting another 12 while referring them to VBA, the VHA has been mute other than to report in October 2016 that its "search is not yet completed." *See* Ornstein Decl. Exhibits 25, 26.  VBA failed to process the 12 pages referred it by VHA and has been entirely silent concerning its own search for responsive records.  *See* Ornstein Decl. at ¶ 15.  So too have OPP and OIG.  *Id.*

The ordinary processing time limit of 20 working days, and a 10 working days' extension for "unusual circumstances," passed long ago for the First and Second FOIA Requests.  At this point, VA could perpetuate its delays in handling these requests *only* if it can demonstrate *both* that (1) the department has exercised "due diligence" and (2) "exceptional circumstances" exist. 5 U.S.C. § 552(a)(6)(C)(i) & (ii).  VA cannot do so.

First, it is clear that due diligence has been completely lacking.  In over twenty months, VHA has not provided *any* response determination and neither VHA nor OCLA has produced *any* record in response to the First FOIA Request.  In over sixteen months, VHA has only provided a "partial initial agency decision" with 26 pages in response to the Second FOIA Request, failing to provide a complete response "determination" or production of records.  VBA, OPP, and OIG have done absolutely nothing—there has been no communication from them to Plaintiffs at all— concerning the Second FOIA Request.

Second, VA cannot demonstrate that it has made "reasonable progress in reducing its backlog of pending requests," as the FOIA statute requires for the "exceptional circumstances" delay tactic to be approved.  *See* 5 U.S.C. § 552(a)(6)(C)(ii).  VA's *growing* backlog of FOIA requests—department-wide *and* with respect to VHA and VBA which received the First and Second FOIA Requests—is evident from publicly available statistics as summarized below:

**Table I**

| Department / Component | Requests Backlogged as of End of Reporting Quarter | | | | | |
|---|---|---|---|---|---|---|
| | FY15Q4 (Exh. 43) | FY16Q1 (Exh. 44) | FY16Q2 (Exh. 45) | FY16Q3 (Exh. 46) | FY16Q4 (Exh. 48) | FY16Q4 (Exh. 50) |
| **VA dep't-wide** | 954 | 1117 | 1270 | 2032 | 3296 | 4296 |
| **VHA** | 329 | 325 | 334 | 349 | 363 | 3582 |
| **VBA** | 379 | 560 | 683 | 1418 | 2582 | 363 |
| **OCLA** | 14 | 17 | 8 | 3 | 6 | 6 |
| **OPP** | 2 | 2 | 4 | 3 | 3 | 3 |
| **OIG** | 0 | 0 | 1 | 1 | 2 | 2 |

*See* Ornstein Decl. at ¶¶ 79-91; Exhibits 43-46, 48 & 50.[5]   As for OCLA, OPP, and OIG, despite

not processing the First and Second FOIA Requests, all appear to have virtually no backlog.  *Id.*

At this time, it is unclear whether VA's delays in handling the First and Second FOIA

Requests are due to chronic understaffing of its FOIA operations, failures to allocate appropriate

financial resources to those operations, intentional efforts to frustrate Plaintiffs' reporting

concerning Agent Orange and dioxin, or otherwise.  Regardless, VA cannot prove both "due

diligence" in processing the First and Second FOIA Requests and "exceptional circumstances"

so as to justify continued delays.

---

[5] There are manifest irregularities in VA's reporting of its backlogs of FOIA requests, at the least with respect to FY16Q4, that render the reliability of VA's statistics highly dubious. "[A]ll agencies are now required [by the Department of Justice] to post four key FOIA statistics each quarter of the fiscal year which are then also displayed on FOIA.gov."  *See* https://www. justice.gov/oip/blog/agency-quarterly-foia-reporting.   This quarterly reporting is meant "to increase accountability and enhance public awareness of agencies' efforts in administering the FOIA."  *See* https://www.justice.gov/oip/blog/foia-guidance-8.  As one of the metrics, "requests [are] reported as 'backlogged' . . . if they are pending beyond the statutory time period for response, . . . or if unusual circumstances are invoked."  *Id.*  Despite the reporting requirement, VA's FY16Q4 quarterly report (for the fiscal year quarter ending September 30, 2016) has been conspicuously unavailable from VA's web page where those reports are accessed, http://www.oprm.va.gov/foia/foia_reports.aspx.  *See* Ornstein Decl. at ¶¶ 84, 87 & Exhibit 47. However, because VA's quarterly data is made available on two websites—va.gov and FOIA.gov—Plaintiffs were still able to obtain VA's backlog data for FY16Q4 from the latter. *See* Ornstein Decl. Exhibit 48.  That data shows an increase in VA's backlog of **62%** from the previous quarter, FY16Q3.  *See* Table I, *infra*.  Puzzled by the increase, particularly at VBA, Plaintiff ProPublica requested confirmation of the data and an explanation from VA.  *See* Ornstein Decl. at ¶ 87 & Exhibit 49.  But no explanation was forthcoming, and VA disavowed the accuracy of the backlog information posted on FOIA.gov.  *Id.*  Instead, VA provided ProPublica with a copy of its missing FY16Q4 quarterly report, which discloses a **111%** increase in VA's backlogged FOIA requests from FY16Q3 to FYQ4 along with an almost *ten-fold* increase in VHA's backlog from 363 to 3582 requests (but a *drop* in VBA's backlog).  *See* Table I, *infra*; Ornstein Decl. Exhibit 50.

Narrowly-tailored discovery requests to VA concerning these discrepancies might ferret out explanations for why VA's overall backlog apparently has swelled and why there have been swings in the reported backlogs at certain VA components.  Because the FOIA statute specifically relies on agencies' backlog metrics in determining whether there are "exceptional circumstances" under which delays in processing FOIA requests are excused, the accuracy of VA's backlog metrics is important.  *See* 5 U.S.C. § 552(a)(6)(C)(ii).

In summary, Plaintiffs are likely to prevail on the merits in demonstrating that VA has not made its responsive, non-exempt records "promptly available" to Plaintiffs.

> **b)  VA has not acted on Plaintiffs' requests for expedited processing of the First and Second FOIA Requests.**

As a separate matter, ProPublica and The Virginian-Pilot requested *expedited* processing for each of the First and Second FOIA Requests.  By email dated January 30, 2016, Plaintiffs asked VHA "what can be done to ***expedite*** [the First FOIA Request]?"  *See* Ornstein Decl. Exhibit 4 (emphasis added).  Yet again on May 25, 2016, Plaintiffs emailed VHA and "ask[ed] -- as we approach our deadline to report on these important matters of public interests -- that [VA] would give consideration to completing these requests quickly."  *Id.* at Exhibit 8.  That email identified both the First and Second FOIA Requests.  *Id.*  VHA's FOIA officer forwarded the May 25, 2016 request to the FOIA officers at VBA and OPP, among others.  *Id.*  Each of these emails should be construed, at a minimum, as requests for expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i) & (v)(II) as well as 38 C.F.R. § 1.556(d)(1)(ii).[6]

It is beyond debate that Plaintiffs are "person[s] primarily engaged in disseminating information" within the meaning of 5 U.S.C. § 552(a)(6)(E)(v)(II) and 38 C.F.R. § 1.556(d)(1)(ii).  ProPublica is an independent newsroom that produces investigative journalism in the public interest.  *See* Ornstein Decl. at ¶ 8.  Honored with three Pulitzer Prizes, ProPublica's news coverage currently attracts 1.1 million unique visitors per month to its web site.  *Id.*  ProPublica's "publishing partners," who publish articles written by ProPublica's

---

[6] Because VA, to date, has not communicated any determination concerning Plaintiffs' requests for expedited processing, the Court is free to consider extra-record evidence and argument concerning the appropriateness of granting expedited processing.  This is not a situation in which "judicial review shall be based on the record before the agency *at the time of the determination*," given that there has been no determination.  *See* 5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added).

journalists and sometimes in collaboration with their own reporters, have included more than 135 news organizations, many of which are household names.[7]  *Id.*  As for The Virginian-Pilot, this paper is the top source of news and information in southeast Virginia and northeastern North Carolina.  *Id.* at ¶ 10.  Founded in 1865, The Virginian-Pilot is a Pulitzer-prize-winning metropolitan newspaper serving almost 300,000 readers daily and over 400,000 on Sunday, and it has been repeatedly named "best paper in the state of Virginia" for decades.  *Id.*  Plaintiffs' reporting on Agent Orange won the 2016 "Topical Reporting" award from the Online News Association, the world's largest organization of digital journalists.  *Id.* at ¶ 66.

Plaintiffs have repeatedly demonstrated a "compelling need" justifying expedited processing.  The First and Second FOIA Requests both stated that they were being "made as part of the news gathering process" and that the requested "information is of timely value."  *See* Ornstein Decl. Exhibits 1, 15.  The President of ProPublica implored that the First and Second FOIA Requests were "of paramount importance to hundreds of thousands, perhaps millions of Vietnam era veterans, some of whom are being diagnosed daily with illnesses that are presumed to be connected with their Vietnam service."[8]  *See* Ornstein Decl. Exhibit 7; *see also id.* at Exhibit 22 (separate statement by ProPublica's senior reporter Charles Ornstein regarding same).  Plaintiffs therefore clearly conveyed sufficient rationale to the VA to conclude that there is a compelling need for expedited processing of the subject requests based on urgency for the new

---

[7] *See, e.g.*, Charles Ornstein [*ProPublica*], *A Patient Is Sued, and His Mental Health Diagnosis Becomes Public*, THE NEW YORK TIMES (Dec. 23, 2015); Charles Ornstein [*ProPublica*], *Your Health Records Are Supposed to be Private. They Aren't*, THE WASHINGTON POST (Dec. 30, 2015); Charles Ornstein, [ProPublica], *New England Journal of Medicine Increasingly Targeted by Critics*, THE BOSTON GLOBE (Apr. 5, 2016); Charles Ornstein & Jessica Huseman [*ProPublica*], *Nursing Home Residents Being Exploited Online — Legally*, THE DES MOINES REGISTER (July 14, 2016).

[8] According to the VA, "[b]etween January 1965 and April 1970, an estimated 2.6 million military personnel who served in Vietnam were potentially exposed to sprayed Agent Orange." *See, e.g.*, http://www1.va.gov/opa/pressrel/pressrelease.cfm?id=1796.

media to inform the public concerning actual or alleged Federal Government activity. *See* 5 U.S.C. § 552(a)(6)(E)(i) & (v)(II); 38 C.F.R. § 1.556(d)(1)(ii).

And as of January 11, 2017, there is yet another compelling need for the requested records: President-elect Trump's nomination of David J. Shulkin, MD, who is the current Under Secretary for Health at the VA, to be the next Secretary of Veterans Affairs. *See* Ornstein Decl. at ¶ 69. The Second FOIA Request specifically seeks records from the Under Secretary for Health. *Id.* at Exhibit 15. The scope of the First FOIA Request also covers certain communications to and from Dr. Shulkin, if any occurred. *Id.* at Exhibit 1. As Secretary, Dr. Shulkin would *de facto* lead the VA's ongoing response with respect to veterans exposed to Agent Orange and dioxin, including with respect to VA's commitment to conduct relevant research, provide compensation and other benefits, engage the Vietnam veterans' community in open and frank discourse, and adjust its policies as appropriate. *Id.* at ¶ 69. It also needs scarcely to be mentioned that if he is confirmed, Dr. Shulkin will be the first non-veteran to be Secretary of Veterans Affairs. *Id.*

In view of the foregoing, there is an urgent and current debate concerning whether the Senate should confirm Dr. Shulkin's nomination and also how best to work with Dr. Shulkin based on his personal views. *Id.*

There also are good reasons to grant expedited processing pursuant to 38 C.F.R. § 1.556(d)(1)(i) & (iv). "The failure to obtain the requested records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." *See* 38 C.F.R. § 1.556(d)(1)(i). Vietnam-era veterans are now reaching advanced age after the passage of four decades since the war. *See* Ornstein Decl. at ¶ 68. Some have contacted

Plaintiffs and stated that they are dying; their health problems may well be due to Agent Orange and dioxin.  *Id.*

Still further, "[t]here is widespread and exceptional interest in which possible questions exist about the government's integrity which affect public confidence."  *See* 38 C.F.R. § 1.556(d)(1)(iv).  For example, Plaintiffs recently reported:

> . . . [S]cores of children [] struggle with strange, debilitating health problems and wonder if the herbicide that sickened their fathers has also affected them.
>
> Along the way, we noticed some themes: For decades, the federal government has resisted addressing these issues, which could ultimately cost billions of dollars in new disability claims.  When science does suggest a connection, the VA has hesitated to take action, instead weighing political and financial costs.  And in some cases, officials have turned to a known skeptic of Agent Orange's deadly effects to guide the VA's decisions.
>
> Frustrated vets summarize the VA's position this way: "Delay, deny, wait till I die."

*See* Ornstein Decl. Exhibit 32, Mike Hixenbaugh & Charles Ornstein, *Rethinking the Cost of War.  What if Casualties Don't End on the Battlefield, but Extend to Future Generations?*, PROPUBLICA and THE VIRGINIAN-PILOT (Dec. 30, 2016), available at https://www.propublica. org/article/rethinking-the-cost-of-war.  Plaintiffs also recently reported:

> . . . [T]housands . . . are [still] grappling with a chilling prospect: Could Agent Orange, the herbicide linked to health problems in Vietnam veterans, have also harmed their children?
>
> For decades, the Department of Veterans Affairs has collected — and ignored — reams of information that could have helped answer that question, an investigation by ProPublica and The Virginian-Pilot has found.

*See* Ornstein Decl. Exhibit 27, Charles Ornstein, Hannah Fresques & Mike Hixenbaugh, *The Children of Agent Orange*, PROPUBLICA and THE VIRGINIAN-PILOT (Dec. 16, 2016), available at https://www.propublica.org/article/the-children-of-agent-orange.  And in March 2016, when the

Institute of Medicine ("IOM") released its latest biennial report on *Veterans and Agent Orange*, frustration among veterans' advocates was clearly apparent:

> The report, according to Rick Weidman of Vietnam Veterans of America, underscores what he called "25 years of willful ignorance" on the part of the VA: "They've tried to undo anything and everything that might lead to further research into the effects of Agent Orange exposure," said Weidman, the group's legislative director. "They are sitting on a mountain range of epidemiological evidence — not just for Vietnam guys, but the health records of every generation of veterans — and they have simply refused to mine the data for the purposes of research."

*See* Ornstein Decl. Exhibit 33, Mike Hixenbaugh & Charles Ornstein, *Researchers Call for More Study of Agent Orange Effects on Vets and Their Kids*, PROPUBLICA and THE VIRGINIAN-PILOT (Mar. 11, 2016), available at https://www.propublica.org/article/researchers-call-for-more-study-of-agent-orange-effects-on-vets-their-kids.

In sum, Plaintiffs are likely to prevail on the merits in demonstrating that VA has failed to respond in a timely manner to Plaintiffs' requests for expedited processing of the First and Second FOIA Requests and that Plaintiffs have demonstrated entitlement to such treatment.

c)      **Because of VA's inaction as well as the scope of Plaintiffs' FOIA requests, early "cut-off" dates for VA's searches would be unreasonable.**

Turning next to the date range that VA must search for responsive records, it would be unlawful and unreasonable for VA to use a "cut-off date" prior to the filing of the Complaint in this action.  Reporting on the news demands timeliness and completeness of information.  *See* Ornstein Decl. at ¶ 78.  For that reason, the First and Second FOIA Requests each specifically seek responsive records until "the date this request is completed" by VA.  *See* Ornstein Decl. Exhibits 1, 15.  The scope of the First and Second FOIA Requests thus explicitly anticipated the possibility that VA might not act with dispatch in processing the requests.

"[T]he most appropriate cut-off date for [a] search would be the date of [VA's] *final decision* . . . Surely, at that point, Plaintiffs [are] put on notice that the VA [is] no longer searching for records.  Additionally, . . . such a cut-off date in the absence of a published cut-off date 'is consistent with the agency's duty to take reasonable steps to ferret out requested documents.'"  *Dayton Newspaper, Inc. v. VA*, 510 F. Supp. 2d 441, 450-51 (S.D. Ohio 2007).  As *CREW* makes clear, the date of a final "determination" is *not* necessarily the date of actual production of responsive, non-exempt records.  711 F.3d at 188.  There has not been any such final "determination" by VHA, VBA, OPP, or OIG in connection with either of the First and Second FOIA Requests.  VHA's most recent communication with Plaintiffs, for example, with respect to the Second FOIA Request stated that "the search is not yet completed."  *See* Ornstein Decl. Exhibit 26.  VHA's only response with respect to the Second FOIA Request, "a partial initial agency decision" dated August 26, 2016, specifically states that "VHA is in the process of searching for records" and that further action will occur "once additional records are received."  *See* Ornstein Decl. Exhibit 25.  As for processing of the Second FOIA Request by VBA, OPP, and OIG, Plaintiffs have not received any communication from them.  And with respect to OCLA, OGC's consideration of an administrative appeal questioned the "reasonableness of the search" that was conducted and remanded the Second FOIA Request to OCLA for a "superseding initial agency decision."  *See* Ornstein Decl. Exhibit 14.

Additionally, "[l]imiting a search by applying a cut-off date, without providing notice of the date to the requester, renders the search unreasonable."  *Dayton Newspaper*, 510 F. Supp. 2d at 449; *see also McGehee*, 697 F.2d at 1105.  Without "determinations" from VA concerning the First and Second FOIA Requests, there has been no notice of a cut-off date.

Moreover, as demonstrated by VA's lack of progress in processing the First and Second FOIA Requests, and VA's statistics concerning its backlog of FOIA requests during the last five quarters for which those statistics are available, *see* Table I, *supra*, VA is not "an agency that responds to requests on a relatively current basis."  *McGehee*, 697 F.2d at 1104.  To the extent VA has conducted any searches thus far, they are now outdated.  It has been impossible for Plaintiffs to determine when the First and Second FOIA Requests have "near[ed] the head of the 'queue'" for processing by VA.  *Id.*  It also is clear, given the lack of response determinations and document productions by VA, that this is <u>not</u> a case in which "[s]ubstantive review follow[ed] promptly" after VA's searches to date and "all nonexempt material [was] released" shortly thereafter.  *Id.*

It would be unreasonable, burdensome, inefficient, and generally counterproductive to force news organizations like Plaintiffs to repeatedly file the same FOIA request with a non-responsive agency, like VA, so as to keep resetting the clock for the timeframe of potentially responsive documents to be searched in the agency's records.  That is especially true here, where VA has failed to actively process the FOIA requests at issue.  VA also redirected the First and Second FOIA requests to numerous components—VHA, OCLA, VBA, OPP, and OIG among them—and it would be unfair and illogical to place the burden on Plaintiffs to subsequently file repetitive FOIA requests with each unresponsive component.  Imposing such a requirement would unnecessarily multiply the number of requests pending before VA, further taxing VA's FOIA offices by swelling VA's FOIA request docket along with its associated record-keeping, searching, and reporting obligations.

In the present circumstances, "one can easily imagine . . . a cut-off date ***much later than*** the time of the original request, that results in a much fuller search and disclosure . . . , [and] that

forecloses the necessity for an excessive number of supplementary demands" through the refiling of the same FOIA request. *Id.* (emphasis added). "Because the Department has a large 'backlog' of FOIA requests, and because [Plaintiffs have] no way of knowing whether the Department created new responsive documents after the date of [their] request[s]" (but suspect so), the Court must reject a cut-off date when its "net result is to increase processing time by forcing [Plaintiffs] to file multiple FOIA requests to obtain documents that the Department would have released in response to [the] single request had it used a later cut-off date." *Public Citizen*, 276 F.3d at 643 (internal citation omitted).

Plaintiffs are likely to prevail on the merits in demonstrating that VA's own dilatory conduct—vastly exceeding the statutorily prescribed time frames for handling the First and Second FOIA Requests—justifies a cut-off date for responsive, non-exempt records closely aligned with the date on which VA (and its components) actually provides response determinations and document productions in response to those requests.

### 2. Plaintiffs Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief.

Plaintiffs will suffer irreparable injury in the absence of the requested preliminary injunctive relief. Quite simply, there are "time-sensitive public interests which underlay the request[s]" that Plaintiffs made pursuant to FOIA and that are the subject of this motion. *Washington Post*, 459 F. Supp. 2d at 75. In such circumstances, "stale information is of little value." *Payne Enterprises, Inc.*, 837 F.2d at 494.

First, without immediate disclosure of the records requested in the First and Second FOIA Requests, ProPublica and The Virginian-Pilot will suffer irreparable injury with respect to their ability to timely and thoroughly report, for the public benefit, on the urgent and current issues surrounding the nominee for the next Secretary of Veterans Affairs, Dr. Shulkin, including

his views concerning Agent Orange and dioxin, and effects on veterans and/or their offspring. *See* Ornstein Decl. at ¶ 69.  "Because the urgency with which the" Plaintiffs press the First and Second FOIA Requests in part "is predicated on a matter of current national debate," due to the impending confirmation hearings and potential confirmation of a new Secretary to lead VA, "a likelihood for irreparable harm exists if the plaintiff[s'] FOIA request[s] do[] not receive expedited treatment."  *Washington Post*, 459 F. Supp. 2d at 74-5.  Here, "the specter of information becoming stale and of little value, increases" with respect to Dr. Shulkin as VA's stonewalling is preventing thorough consideration of the views of the nominee prior to confirmation.  *Id.* at 74.  Even if confirmation occurs, an immediate understanding of Dr. Shulkin's views vis-à-vis Agent Orange and dioxin is important if the public is to impact the priorities he sets for the department during his first days in office.  *See* Ornstein Decl. at ¶ 69.

ProPublica and The Virginian-Pilot require immediate disclosure of the requested records concerning Dr. Shulkin in order to inform the public about his views on Agent Orange and dioxin, which to some extent are shrouded in mystery.  *Id.*  The public interest in timely and thorough reporting concerning Dr. Shulkin dictates immediate disclosure of the records requested in the First and Second FOIA Requests.  *Id.*

Second, with a new President, Donald J. Trump, set to take office on January 20, 2017, and a new Secretary of Veterans Affairs nominated (on January 11, 2017) to head VA, there is an urgent and current debate concerning an array of decisions to be made by the incoming administration regarding Agent Orange.  *See* Ornstein Decl. at ¶ 67, Exhibit 42.  Those decisions for example include: (1) whether veterans' exposure to Agent Orange can affect their descendents and whether those descendents should receive benefits; (2) whether to expand the list of diseases that are presumed to be linked to Agent Orange; (3) whether to make naval

veterans who served off the coast of Vietnam eligible for benefits; and (4) whether to extend coverage to service members who served along the Korean demilitarized zone during the Vietnam War and who say they were exposed, as well.  *Id.*  Without immediate disclosure of the records requested in the First and Second FOIA Requests, *ProPublica* and *The Virginian-Pilot* will suffer irreparable injury with respect to their ability to timely and thoroughly report, for the public benefit, on these urgent and current issues concerning Agent Orange and dioxin.  *See* Ornstein Decl. at ¶ 67.  ProPublica and The Virginian-Pilot require immediate disclosure of the requested records concerning Agent Orange and dioxin in order to inform the public about VA's views and priorities on this subject, which to some extent are shrouded in mystery.  *Id.*

Third, ProPublica and The Virginian-Pilot will suffer irreparable injury without immediate disclosure of the records requested in the First and Second FOIA Requests because the Vietnam-era veterans whom they seek to research, interview, and/or report about are reaching advanced ages and some are dying, possibly due to Agent Orange.  *Id.* at ¶ 68.  If there is information contained in responsive records that might at least give clues about how to recognize and/or treat maladies caused by Agent Orange and dioxin, yet those records are not being timely disclosed, Plaintiffs' news publications will not be able to convey the information for the betterment of the interested public or report with the benefit of insights from these dying veterans.  *Id.*

Fourth, in March 2016, the Institute of Medicine ("IOM") released its Tenth Biennial Update of the *Veterans and Agent Orange* (*VAO*) series, with particular attention to scientific studies published from September 30, 2012 through September 30, 2014, concerning Agent Orange and dioxin.  *See* Ornstein Decl. at ¶ 70.  That report provides a basis on which the Secretary of Veterans Affairs can decide to expand benefits, including compensation, for

veterans with certain illnesses scientifically linked to Agent Orange.  *See id.* at ¶ 70, Exhibit 33. It has now been over ten months since that report was released, yet the VA has not publicly provided any reaction to the findings therein.  *Id.* at ¶ 70.

It is clear, based on a statement ProPublica obtained from the VA on November 4, 2016, that for several months now the VA has deferred action on finalizing its responses with respect to the IOM's ten-month old report, pending the new administration assuming control.  *Id.* at ¶¶ 71, 72.  The VA also has not actively pursued amendments to its regulations, in light of the IOM report, to expand the list of "presumptive diseases" associated with exposure to Agent Orange, which could trigger benefits for additional veterans and their survivors.  *Id.*  Given that a new administration is about to take office on January 20, 2017, this period of inaction is about to end. *Id.* at ¶ 72.

There is an urgent and current debate concerning how the next administration should respond to the IOM's March 2016 report on Agent Orange.  *Id.*  Without immediate disclosure of the records requested in the First and Second FOIA Requests, ProPublica and The Virginian-Pilot will suffer irreparable injury with respect to their ability to timely and thoroughly report, for the public benefit, on these urgent and current issues.  *Id.*  ProPublica and The Virginian-Pilot require immediate disclosure of the requested records concerning Agent Orange and dioxin in order to inform the public about the VA's views on presumptive diseases and whether new ones should be imminently recognized through rulemaking.  *Id.*  At least to some extent, these views are presently shrouded in mystery.  *Id.*  The public interest in timely and thorough reporting concerning potential new "presumptive diseases" dictates immediate disclosure of the records requested in the First and Second FOIA Requests.  *Id.*  There is urgency to inform the public concerning actual or alleged Federal government activity with respect to the IOM report.  *Id.*

"[T]he most compelling reason to grant injunctive relief is to prevent the judicial process from being rendered futile by a party's act or refusal to act." *Armstrong v. Bush*, 807 F. Supp. 816, 821 (D.D.C. 1992).  Without immediate disclosure of the requested records, the judicial process will fail to prevent the loss of timely reporting on issues of vital interest.  "Not only is public awareness a necessity, but so too is *timely* public awareness." *EPIC I*, 416 F. Supp. 2d at 40 (emphasis in original).  In addition, to state the obvious, "[w]ithout a preliminary injunction directing the [government] to process the plaintiff[s'] FOIA request[s] in an expedited fashion, the plaintiff[s] would lose out on [their] statutory right to expedited processing." *Washington Post*, 459 F. Supp. 2d at 75.

Finally, since 2015, Plaintiffs together have engaged in a project known as "Reliving Agent Orange," during which reporters from these news publications, in part, have been investigating ways in which children of Vietnam veterans may be affected by a parent's exposure to Agent Orange.  *See* Ornstein Decl. at ¶ 45.  To help Plaintiffs investigate the impact of Agent Orange, including its generational impact on the children of Vietnam-era veterans, Plaintiffs have undertaken numerous unique and dedicated efforts including: conducting surveys of veterans of the Vietnam War, their children, and their family members concerning how they believe Agent Orange exposure has impacted their health or family's health (as of mid-December 2016, these surveys had generated over 6,000 responses); hosting discussions on the multigenerational impacts of Agent Orange, including a panel discussion on June 30, 2016 in Washington, DC; conducting a crowdsourced effort to gather information on more than 700 Navy ships that either saw combat in Vietnam or whose activities may have exposed the ship to Agent Orange; and conducting a scientific study approved by an Institutional Review Board ("IRB") provided by a private company—so as to gain access to a VA registry of health data on

more than 600,000 veterans—after the VA refused to disclose its data in response to a FOIA request (which is not at issue in this case).  *Id.* at ¶ 46.

Plaintiffs, individually and together, have dedicated significant resources and extensive investigative reporting to Agent Orange and dioxin, and effects on veterans and/or their offspring.  *Id.* at ¶ 47.  Numerous articles have been published.  *Id.* at ¶¶ 48-64 & 67, Exhibits 27-42.  Plaintiffs, individually and together, continue to invest significant resources and extensive investigative reporting with respect to researching and reporting on this topic.  *Id.* at ¶ 65.  They continue to have intense interest in educating the public, including their readers in Congress, the administration, the military, and the veteran community concerning this subject matter.  *Id.*  And Plaintiffs continue to see intense interest in this subject matter from their readership as well as those who have completed their surveys or provided information through their crowdsourced efforts.  *Id.*

Plaintiffs' considerable investments in labor, capital, and time in connection with their reporting on Agent Orange and dioxin, and effects on veterans and/or their offspring, will be irreparably injured without the requested injunctive relief.  *Id.* at ¶ 77.  Without immediate disclosure of the VA's records as sought by Plaintiffs, their reporting on this subject matter of considerable public interest is frustrated and opportunities to exploit Plaintiffs' investments in this area are forever lost.  *Id.*

To summarize, disclosure of the records sought in the First and Second FOIA Requests would serve the public interest and inform the public debate about Agent Orange and dioxin, and effects on veterans and/or their offspring, which is of vital and urgent public concern.  *Id.* at ¶ 74. Any further delay in the processing of the First and Second FOIA Requests will irreparably harm ProPublica's and The Virginian-Pilot's ability, and that of the public, to obtain in a timely

fashion information vital to the current and ongoing debate surrounding whether to amend VA's regulations, or institute rulemaking in connection with new VA regulations, regarding Agent Orange and dioxin, and its effects on veterans and/or their offspring. *Id.* at ¶ 75. There is a compelling need for the First and Second FOIA Requests to be immediately processed, and responsive records to be immediately produced, given the urgency to inform the public concerning actual or alleged Federal government activity regarding Agent Orange and dioxin, and its effects on veterans and/or their offspring. *Id.* at ¶¶ 69, 76. Without prompt access to information about VA's consideration of Agent Orange and dioxin, and its effects on veterans and/or their offspring, as requested in the First and Second FOIA Requests, ProPublica's and The Virginian-Pilot's ability to engage in an urgent and current debate, through its reporting on this subject matter, will be irretrievably lost. *Id.* at ¶¶ 69, 78.

### 3. Injunctive Relief Will Not Burden Others' Interests

VA "cannot be said to 'be burdened by a requirement that it comply with the law.'" *EPIC I*, 416 F. Supp. 2d at 41 (citation omitted). The preliminary injunctive relief that Plaintiffs seek requires nothing more of the government than prompt and/or expedited processing of the First and Second FOIA Requests as well as searches that apply reasonable cut-off dates. All are legally required.

Still further, Congress already balanced the competing interests of various FOIA requesters in providing a statutory right to expedited processing, for example, for members of the press. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). That some FOIA requesters are entitled to move through the processing queue faster than others has already been contemplated and approved.

Finally, VA's workload will not be materially altered by the grant of injunctive relief; the scope of its document review and production remains unchanged whether the First and Second FOIA Requests are processed immediately or at a later date.

4.      **The Public Interest Favors the Requested Relief**

"The public interest prong is met because 'there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate.'  Moreover, the public interest is also served by the expedited release of the requested documents because it furthers FOIA's core purpose of 'shedding light on an agency's performance of its statutory duties.'"  *EPIC I*, 416 F. Supp. 2d at 42 (citations omitted).

In view of the urgent and current debate surrounding, *inter alia*, the nomination of the next Secretary of Veterans Affairs, the impending priority-setting by a new administration, the deleterious effects of Agent Orange and dioxin being experienced on a daily basis by countless veterans and their offspring, and the effects of their poor health on their families, the public interest favors a preliminary injunction requiring the VA to promptly and/or expeditiously meet its obligations under the FOIA statute and *CREW*, and disclose all responsive, non-exempt records forthwith.

## CONCLUSION

The VA has neither satisfied the time constraints applicable to FOIA requests nor acted with any semblance of due diligence.  Exceptional circumstances cannot be demonstrated to excuse any further delay.  It is clear that ProPublica and The Virginian Pilot are likely to succeed on the merits and irreparable harm will occur without timely and complete response "determinations" in connection with the First and Second FOIA Requests as well as release of responsive, non-exempt records.  Finally, a preliminary injunction would further the public interest while not burdening others' interests.

The public cannot be timely informed about "what their government is up to" if the VA is permitted to continue its seemingly endless cycle of delaying action on the First and Second FOIA Requests.  *See United States Department of Justice v. Reporters Committee for Freedom*

*of the Press*, 489 U.S. 749, 772-73 (1989).  When, as here, such a core purpose of FOIA is so thoroughly thwarted, preliminary injunctive relief is entirely appropriate.

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be granted.  A proposed order is submitted herewith requiring VA to provide the following to Plaintiffs with respect to the First and Second FOIA Requests: (1) partial response "determinations," complying with *CREW* and with cut-off dates no earlier than the date the Complaint was filed in this action, for records to and from VA's current Under Secretary for Health, David J. Shulkin, MD, no later than seven days following grant of injunctive relief as well as production of responsive, non-exempt records along with a *Vaughn* index of any withholdings by ten days following grant; and (2) complete response "determinations," complying with *CREW* and with cut-off dates no earlier than the date the Complaint was filed in this action, no later than twenty-one days following grant of injunctive relief as well as production of responsive, non-exempt records along with a *Vaughn* index of any withholdings by thirty days following grant.

Pursuant to Local Rule 65.1(d), Plaintiffs request a hearing on this motion at the earliest juncture.

Dated:  January 19, 2017                    Respectfully submitted,

                                            /s/ Seth A. Watkins_____
                                            Seth A. Watkins (D.C. Bar # 467470)
                                                Email:  watkins@adduci.com
                                            ADDUCI, MASTRIANI & SCHAUMBERG LLP
                                            1133 Connecticut Avenue, NW
                                            Washington, DC 20036
                                            Telephone: (202) 407-8647
                                            Facsimile: (202) 466-2006

                                            *Attorneys for Plaintiffs Pro Publica, Inc. and*
                                            *Virginian-Pilot Media Companies, LLC*