**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PRO PUBLICA, INC. and<br>VIRGINIAN-PILOT MEDIA COMPANIES, LLC<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>VETERANS AFFAIRS<br><br>Defendant. | Civil Action No. _____ |

**DECLARATION OF CHARLES ORNSTEIN**

I, Charles Ornstein, hereby declare and state the following:

1.      I make this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction in the above-captioned action.

2.      I am a senior reporter for Plaintiff Pro Publica, Inc. ("*ProPublica*"), where I have worked since August 2008, generally covering health care and subject matter related thereto.  Since 2015, my reporting, in part, has covered Agent Orange and dioxin and effects on veterans and/or their offspring.  *ProPublica* has an office at 155 Avenue of the Americas, 13th Floor, New York, New York 10013.

3.      I was a lead reporter on a series of articles in the *Los Angeles Times* entitled "The Troubles at King/Drew" hospital that won the Pulitzer Prize for Public Service, the Robert F. Kennedy Journalism Award and the Sigma Delta Chi Award for public service in 2005.  The *ProPublica* series "When Caregivers Harm: California's Unwatched Nurses," on which I was a lead reporter, was a finalist for a 2010 Pulitzer Prize for Public Service.

4.　　　I am currently an adjunct professor at Columbia University's School of Journalism, where I advise master's students as well as teach a seminar called "Investigating Health Care" in the spring and a class called "Investigative Techniques" in the fall.

5.　　　Prior to joining *ProPublica*, I was a reporter for the *Los Angeles Times* from July 2001 to August 2008.  Before that, I was a reporter for the *Dallas Morning News* from July 1996 to June 2001, a media fellow with the Kaiser Family Foundation during 1999 to 2000, and Executive Editor of *The Daily Pennsylvanian* during 1995 to 1996.

6.　　　I was the President of the Association of Health Care Journalists from 2009 to 2013, and served as its vice president from 2006 to 2009 as well as its treasurer from 2004 to 2006.

7.　　　I received a Bachelor of Arts in History and Psychology from the University of Pennsylvania.

8.　　　*ProPublica* is an independent newsroom that produces investigative journalism in the public interest.  *ProPublica* has been honored with three Pulitzer Prizes.  It is my understanding that on average, *ProPublica*'s web site has 1,100,000 unique visitors per month.  It also is my understanding that since its publishing began in 2008, *ProPublica*'s "publishing partners" have included more than 135 news organizations including some of the most prominent publications in journalism.  Those organizations have included: *the Atlantic, BBC, Boston Globe, Los Angeles Times, Miami Herald, New York Times, NPR News, Politico, USA Today, Virginian-Pilot [Norfolk], and the Washington Post.*

9.　　　*ProPublica* and Virginian-Pilot Media Companies, LLC ("*The Virginian-Pilot*"), while not legally related to one another in terms of ownership or corporate governance, are "publishing partners."  Reporters from the two publications work together on investigative

journalism, during which we research, report, and co-publish articles on a variety of topics including Agent Orange.

10.     It is my understanding that *The Virginian-Pilot* is the top source of news and information in southeast Virginia and northeastern North Carolina.  It also is my understanding that, having been founded in 1865, *The Virginian-Pilot* is a Pulitzer-prize-winning metropolitan newspaper serving almost 300,000 readers daily and over 400,000 on Sunday, and it has been repeatedly named "best paper in the state of Virginia" for decades.

11.     The first FOIA request at issue in this case was filed with the U.S. Department of Veterans Affairs ("VA") on May 12, 2015 ("First FOIA Request").  It seeks correspondence, memoranda, and reports regarding Agent Orange and dioxin, and its effects on veterans and/or their offspring, beginning January 1, 2009 to and from Drs. Han K. Kang and Michael Peterson, as well as Congressional correspondence.  It was redirected to the Veterans Health Administration ("VHA") and the Office of Congressional and Legislative Affairs ("OCLA"), both part of the VA, and assigned tracking numbers 15-05014-F and 15-05015-F, respectively.

12.     The second FOIA request disputed in this case was filed with the VA on September 1, 2015 ("Second FOIA Request").  It seeks correspondence, memoranda, and reports regarding Agent Orange and dioxin, and its effects on veterans and/or their offspring, beginning January 1, 2009, to and from various office holders at the VA.  It was redirected to, among others, VHA, the Veterans Benefits Administration ("VBA"), the Office of Policy and Planning ("OPP"), and the Office of Inspector General ("OIG"), all part of the VA, and assigned tracking numbers 15-07638-F, 15-07639-F, 15-07641-F, and "unassigned," respectively.

13.     The First FOIA Request and the Second FOIA Request (collectively, "First and Second FOIA Requests") have been pending for 618 days and 506 days, respectively, as of the date of this Declaration.

14.     Since May 12, 2015, the VA has failed to produce *any* records in response to the First FOIA Request, with VHA not even providing a response determination stating that it gathered and reviewed responsive documents, explaining the scope of the documents it intends to produce and withhold, or informing *ProPublica* and *The Virginian-Pilot* of their right to appeal.

15.     Since September 1, 2015, the VA's VBA, OPP, and OIG have neither made a response determination nor produced any records to *ProPublica* and *The Virginian-Pilot* in response to the Second FOIA Request.  Moreover, VHA has neither completed its response determinations (it has produced 26 pages—12 of which were entirely redacted and forwarded to VBA—and stated that its search "is not yet completed") nor completed its record productions to *ProPublica* and *The Virginian-Pilot* in response to the Second FOIA Request.  Again, *ProPublica* and *The Virginian-Pilot* have not been informed that the VA components gathered and reviewed all responsive documents, nor have *ProPublica* and *The Virginian-Pilot* been provided an explanation of the scope of the documents each component intends to produce and withhold or *ProPublica*'s and *The Virginian-Pilot*'s right to appeal.  Based on my investigative research to date, I find it inconceivable that VHA has only 26 pages of records in its possession, custody, or control concerning Agent Orange and its effect on Vietnam veterans and their children.

16.     I have jointly pursued the First and Second FOIA Requests that are the subject of this action with my "reporting partner," Mike Hixenbaugh, and our work with respect to these requests has been pursued on behalf of *ProPublica* and *The Virginian-Pilot*, respectively.  I jointly drafted the First and Second FOIA Requests with Mike Hixenbaugh.

17.     Subsequent to their submission in 2015, I personally have had extensive communications with the VA concerning the processing of the First and Second FOIA Requests. I also have been copied on extensive communications with the VA, mostly to or from Mike Hixenbaugh, concerning the processing of the First and Second FOIA Requests.  By virtue of those communications, it is my understanding that the VA has treated the First and Second FOIA Requests as having been jointly submitted by *ProPublica* and *The Virginian-Pilot*.

18.     By written agreements, *ProPublica* and *The Virginian-Pilot* each hold an undivided one-half interest in each of the First and Second FOIA Requests.

19.     Attached hereto as **Exhibit 1** is a true and correct copy of the First FOIA Request, dated May 12, 2015.

20.     Attached hereto as **Exhibit 2** is a true and correct copy of an email from the VA's FOIA Service dated May 19, 2015 acknowledging the First FOIA Request.

21.     Attached hereto as **Exhibit 3** is a true and correct copy of an email and letter from the Veterans Health Administration ("VHA") FOIA Office, dated May 19, 2015, acknowledging the First FOIA Request.

22.     Attached hereto as **Exhibit 4** is a true and correct copy of an email chain with emails between Mike Hixenbough and/or Charles Ornstein and the VHA FOIA Office, dated between January 11, 2016 and March 24, 2016, concerning the First FOIA Request and/or the Second FOIA Request.

23.     Attached hereto as **Exhibit 5** is a true and correct copy of an email chain with emails between Mike Hixenbough and/or Charles Ornstein and the VHA FOIA Office and/or a former member of the VHA FOIA Office and/or the Office of Government Information Services

("OGIS"), dated between January 11, 2016 and February 17, 2016, concerning the First FOIA Request and/or the Second FOIA Request.

24.     Attached hereto as **Exhibit 6** is a true and correct copy of an email chain between Mike Hixenbough and/or Charles Ornstein and a "Facilitator" at OGIS, dated between March 7, 2016 and March 9, 2016, concerning the First FOIA Request.

25.     Attached hereto as **Exhibit 7** is a true and correct copy of a letter from Richard J. Tofel, President of *ProPublica*, to Richard J. Hipolit, Deputy General Counsel of the VA, dated April 6, 2016, concerning the First and Second FOIA Requests.  *ProPublica* did not receive any response to this letter from VA.

26.     Attached hereto as **Exhibit 8** is a true and correct copy of an email chain with emails between Mike Hixenbough and/or Charles Ornstein and a VHA FOIA Officer, among others, dated between May 25, 2016 and July 19, 2016 concerning the First and Second FOIA Requests.

27.     Attached hereto as **Exhibit 9** is a true and correct copy of an email chain with emails between Mike Hixenbough and/or Charles Ornstein and a VHA FOIA Officer and/or a former member of the VHA FOIA Office, dated August 17, 2016, concerning the First FOIA Request.

28.     Attached hereto as **Exhibit 10** is a true and correct copy of an email chain with emails between Charles Ornstein and a VHA FOIA Officer and/or a former member of the VHA FOIA Office, dated between September 13, 2016 and October 25, 2016, concerning the First FOIA Request.

29.     Attached hereto as **Exhibit 11** is a true and correct copy of an email chain with emails between Charles Ornstein and a VHA FOIA Officer and/or the Director of VHA's Information Access and Privacy Office, dated December 9, 2016, concerning the First FOIA Request.

30.     Attached hereto as **Exhibit 12** is a true and correct copy of an email from a FOIA Officer at VA's OCLA to Mike Hixenbaugh, dated August 25, 2015, providing a response determination in connection with the First FOIA Request.

31.     Attached hereto as **Exhibit 13** is a true and correct copy of an email chain including an email from Mike Hixenbaugh to the VA's Office of General Counsel ("OGC"), dated September 1, 2015, administratively appealing OCLA's August 25, 2015 response determination in connection with the First FOIA Request.

32.     Attached hereto as **Exhibit 14** is a true and correct copy of a letter from VA's OGC to Mike Hixenbaugh, remanding the First FOIA Request to OCLA for a "superseding initial agency decision" as well as referral to other VA offices that may have responsive information.

33.     Attached hereto as **Exhibit 15** is a true and correct copy of the Second FOIA Request, dated September 1, 2015.

34.     Attached hereto as **Exhibit 16** is a true and correct copy of an email from the VA's FOIA Service dated September 3, 2015 acknowledging the Second FOIA Request.

35.     Attached hereto as **Exhibit 17** is a true and correct copy of an email and letter from the Veterans Health Administration ("VHA") FOIA Office, dated September 3, 2015, acknowledging the Second FOIA Request.

36.     Attached hereto as **Exhibit 18** is a true and correct copy of emails and a letter from the Office of the Secretary, Veterans Affairs ("OSVA") to Mike Hixenbaugh, dated September 24, 2015, providing a response determination in connection with the Second FOIA Request.

37.     Attached hereto as **Exhibit 19** is a true and correct copy of an email and letter from VA's OCLA, dated February 8, 2016, providing a response determination in connection with the Second FOIA Request.

38.     Attached hereto as **Exhibit 20** is a true and correct copy of an email chain between the VHA FOIA Office and a VHA FOIA Officer and Mike Hixenbaugh and Charles Ornstein, dated September 3, 2015 and July 7, 2016, concerning the Second FOIA Request.

39.     Attached hereto as **Exhibit 21** is a true and correct copy of an email chain between the VHA FOIA Office and a VHA FOIA Officer, Mike Hixenbaugh and Charles Ornstein, and OGIS, dated September 3, 2015 and July 7, 2016, concerning the Second FOIA Request.

40.     Attached hereto as **Exhibit 22** is a true and correct copy of a letter from Charles Ornstein to LaVerne H. Council, Assistant Secretary for Information Technology and Chief Information Officer, Office of Information Technology at the VA as well as to Leigh A. Bradley, General Counsel of the VA, dated July 13, 2016, concerning the Second FOIA Request.

41.     Attached hereto as **Exhibit 23** is a true and correct copy of an email dated July 21, 2016 as well as an email and letter dated August 16, 2016, from OGIS to Charles Ornstein and Mike Hixenbaugh concerning the Second FOIA Request.

42.     Attached hereto as **Exhibit 24** is a true and correct copy of a letter from a Government Information Specialist at VA's OGC to Charles Ornstein, dated August 3, 2016, docketing an administrative appeal in connection with the Second FOIA Request.  This is the only response that *ProPublica* has received from VA specifically referencing my July 13, 2016 letter (Exhibit 22).

43.     Attached hereto as **Exhibit 25** is a true and correct copy of an email and letter from a VHA FOIA Officer, dated August 26, 2016, providing a "partial initial agency decision" in connection with the Second FOIA Request.

44.     Attached hereto as **Exhibit 26** is a true and correct copy of an email chain between the VHA FOIA Office, a VHA FOIA Officer, Mike Hixenbaugh, and Charles Ornstein, dated between September 3, 2015 and October 28, 2016, concerning the Second FOIA Request.

45.     Since 2015, *ProPublica* and *The Virginian-Pilot* together have engaged in a project known as "Reliving Agent Orange," during which reporters from these publications, in part, have been investigating ways in which children of Vietnam veterans may be affected by a parent's exposure to Agent Orange.

46.     To help *ProPublica* and *The Virginian-Pilot* investigate the impact of Agent Orange, including its generational impact on the children of Vietnam-era veterans, we have undertaken numerous unique and dedicated efforts including:

- conducting surveys of veterans of the Vietnam War, their children, and their family members concerning how they believe Agent Orange exposure has impacted their health or family's health (*see, e.g.*, "Are You a Vietnam Veteran? Help Us Investigate the Impact of Agent Orange," available at https://www.propublica.org/getinvolved/item/vietnam-veterans-agent-orange-propublica-investigate); as of mid-December 2016, these surveys had generated over 6,000 responses (*see, e.g.*, "Vietnam Veterans and Their Families Share Stories of Exposure, Illness and Frustration," available at https://www.propublica.org/article/agent-orange-vietnam-veterans-their-families-share-stories-exposure);

- hosted a panel discussion on June 30, 2016 in Washington, DC on the multigenerational impacts of Agent Orange, entitled "A Toxic Legacy: Has Agent Orange Hurt the Children of Vietnam Vets?" (*see, e.g.*, "ProPublica, Virginian-Pilot Convening Asks: Has Agent Orange Hurt the Children of Vietnam Vets?,"

available at https://www.propublica.org/atpropublica/item/propublica-virginian-pilot-convening-to-focus-on-children-of-vietnam-vets-a);

- conducting a crowdsourced effort to gather information on more than 700 Navy ships that either saw combat in Vietnam or whose activities may have exposed the ship to Agent Orange (*see, e.g.*, "Help ProPublica Research More Than 700 Navy Ships That Served in Vietnam," available at https://www.propublica.org/article/help-propublica-research-more-than-700-navy-ships-that-served-in-vietnam); and

- conducted a scientific study approved by an Institutional Review Board ("IRB") provided by a private company—so as to gain access to a VA registry of health data on more than 600,000 veterans—after the VA refused to disclose its data in response to a FOIA request (which is not at issue in this case) (*see, e.g.*, "How We Obtained the Government's Data on Agent Orange and Birth Defects," available at https://www.propublica.org/article/children-of-agent-orange-editors-note);

47.    *ProPublica* and *The Virginian-Pilot* individually and together have dedicated significant resources and extensive investigative reporting to Agent Orange and dioxin, and effects on veterans and/or their offspring.

48.    A selection of the articles that *ProPublica* and *The Virginian-Pilot* have published during the last year relating to children of Vietnam veterans exposed to Agent Orange includes the following.

49.    Attached hereto as **Exhibit 27** is a true and correct copy of Charles Ornstein, Hannah Fresques & Mike Hixenbaugh, "The Children of Agent Orange," *ProPublica* and *The Virginian-Pilot* (Dec. 16, 2016), available at https://www.propublica.org/article/the-children-of-agent-orange.

50.     Attached hereto as **Exhibit 28** is a true and correct copy of Joanne Kimberlin, "'We Want It to Stop with Us': Agent Orange Curse Hangs Over Families of Vietnam Veterans," *The Virginian-Pilot* (Dec. 16, 2016), available at http://pilotonline.com/news/military/veterans/vietnam/we-want-it-to-stop-with-us-agent-orange-curse/article_3c52d33c-069a-5535-bea4-ced2d1e555c5.html.

51.     Attached hereto as **Exhibit 29** is a true and correct copy of Stephen M. Katz, as told to Mike Hixenbaugh & Charles Ornstein, "A Father's War, A Son's Toxic Inheritance," *ProPublica* and *The Virginian-Pilot* (June 17, 2016), available at https://www.propublica.org/article/a-fathers-war-a-sons-toxic-inheritance.

52.     Attached hereto as **Exhibit 30** is a true and correct copy of Terry Parris Jr., Charles Ornstein, & Mike Hixenbaugh, "Reliving Agent Orange: What the Children of Vietnam Vets Have to Say," *ProPublica* and *The Virginian-Pilot* (June 17, 2016), available at https://www.propublica.org/article/reliving-agent-orange-what-the-children-of-vietnam-vets-have-to-say.

53.     Attached hereto as **Exhibit 31** is a true and correct copy of Charles Ornstein, "A Public Official's Private Pain," *ProPublica* (Dec. 16, 2016), available at https://www.propublica.org/article/linda-kochmar-agent-orange.

54.     Attached hereto as **Exhibit 32** is a true and correct copy of Mike Hixenbaugh & Charles Ornstein, "Rethinking the Cost of War.  What if Casualties Don't End on the Battlefield, but Extend to Future Generations?," *ProPublica* and *The Virginian-Pilot* (Dec. 30, 2016), available at https://www.propublica.org/article/rethinking-the-cost-of-war.

55.     Attached hereto as **Exhibit 33** is a true and correct copy of Mike Hixenbaugh & Charles Ornstein, "Researchers Call for More Study of Agent Orange Effects on Vets and Their

Kids," *ProPublica* and *The Virginian-Pilot* (Mar. 11, 2016), available at https://www.pro publica.org/article/researchers-call-for-more-study-of-agent-orange-effects-on-vets-their-kids.

56. A selection of the articles that *ProPublica* and *The Virginian-Pilot* have published during the last year relating to various aspects of Agent Orange (other than articles concerning its effects on offspring of Vietnam veterans, as already listed above) includes the following.

57. Attached hereto as **Exhibit 34** is a true and correct copy of Charles Ornstein & Mike Hixenbaugh, "The Agent Orange Widows Club," *ProPublica* and *The Virginian-Pilot* (Dec. 28, 2016), available at https://www.propublica.org/article/the-agent-orange-widows-club.

58. Attached hereto as **Exhibit 35** is a true and correct copy of Charles Ornstein & Mike Hixenbaugh, "New Study Could Pressure VA to Expand Agent Orange Benefits," *ProPublica* and *The Virginian-Pilot* (Nov. 15, 2016), available at https://www.propublica.org/ article/new-study-could-pressure-va-to-expand-agent-orange-benefits.

59. Attached hereto as **Exhibit 36** is a true and correct copy of Charles Ornstein & Mike Hixenbaugh, "Dr. Orange: The Secret Nemesis of Sick Vets," *ProPublica* and *The Virginian-Pilot* (Oct. 26, 2016), available at https://www.propublica.org/article/alvin-young-agent-orange-va-military-benefits.

60. Attached hereto as **Exhibit 37** is a true and correct copy of Charles Ornstein, Sisi Wei, & Mike Hixenbaugh, "Eight Times Agent Orange's Biggest Defender Has Been Wrong or Misleading," *ProPublica* and *The Virginian-Pilot* (Oct. 26, 2016), available at https://projects. propublica.org/graphics/alvin-young.

61. Attached hereto as **Exhibit 38** is a true and correct copy of Charles Ornstein & Mike Hixenbaugh, "On Agent Orange, VA Weighs Politics and Cost Along With Science,"

*ProPublica* and *The Virginian-Pilot* (June 15, 2016), available at https://www.propublica.org/article/on-agent-orange-va-weighs-politics-and-cost-along-with-science.

62.     Attached hereto as **Exhibit 39** is a true and correct copy of Mike Hixenbaugh, Charles Ornstein & Terry Parris Jr., "Vietnam Vets Push VA to Link Bladder Cancer to Agent Orange," *The Virginian-Pilot* and *ProPublica* (Apr. 27, 2016), available at https://www.propublica.org/article/vietnam-vets-push-va-to-link-bladder-cancer-to-agent-orange.

63.     Attached hereto as **Exhibit 40** is a true and correct copy of Charles Ornstein, Terry Parris Jr., & Mike Hixenbaugh, "Ailing Vietnam Vets Hunt Through Ships' Logs to Prove They Should Get Benefits," *ProPublica* and *The Virginian-Pilot* (Mar. 4, 2016), available at https://www.propublica.org/article/vietnam-vets-hunt-through-ships-logs-to-prove-they-should-get-benefits.

64.     Attached hereto as **Exhibit 41** is a true and correct copy of Charles Ornstein & Terry Parris Jr., "Once Again, the VA Turns Down Navy Vets for Agent Orange Benefits," *ProPublica* (Feb. 8, 2016), available at https://www.propublica.org/article/once-again-the-va-turns-down-navy-vets-for-agent-orange-benefits.

65.     *ProPublica* and *The Virginian-Pilot* individually and together continue to invest significant resources and extensive investigative reporting with respect to researching and reporting on Agent Orange and dioxin, and effects on veterans and/or their offspring.  We continue to have intense interest in educating the public, including our readers in Congress, the administration, the military, and the veteran community concerning this subject matter.  And we continue to see intense interest in this subject matter from our readership as well as those who have completed our surveys or provided information through our crowdsourced efforts.

66.     *ProPublica* and *The Virginian-Pilot* together won the 2016 "Topical Reporting" award from the Online News Association ("ONA"), the world's largest organization of digital journalists, for their reporting on Agent Orange.

67.     With a new President, Donald J. Trump, set to take office on January 20, 2017, and a new Secretary of Veterans Affairs nominated (on January 11, 2017) to lead the VA, there is an urgent and current debate concerning an array of decisions to be made by the incoming administration concerning Agent Orange.  Those decisions for example include: (1) whether veterans' exposure to Agent Orange can affect their descendents and whether those descendents should receive benefits; (2) whether to expand the list of diseases that are presumed to be linked to Agent Orange; (3) whether to make naval veterans who served off the coast of Vietnam eligible for benefits; and (4) whether to extend coverage to service members who served along the Korean demilitarized zone during the Vietnam War and who say they were exposed, as well.  An article on this topic that I wrote for *ProPublica*, along with Mike Hixenbaugh for *The Virginian-Pilot*, published on December 28, 2016 and entitled "Long List of Agent Orange Decisions Awaits VA in 2017," available at https://www.propublica.org/article/long-list-of-agent-orange-decisions-awaits-va-in-2017, is attached as **Exhibit 42**.  Without immediate disclosure of the records requested in the First and Second FOIA Requests, *ProPublica* and *The Virginian-Pilot* will suffer irreparable injury with respect to their ability to timely and thoroughly report, for the public benefit, on these urgent and current issues concerning Agent Orange and dioxin.  *ProPublica* and *The Virginian-Pilot* require immediate disclosure of the requested records concerning Agent Orange and dioxin in order to inform the public about the VA's views and priorities on this subject, which to some extent are shrouded in mystery.

68.    Vietnam-era veterans are now reaching advanced age after the passage of four decades since the war ended in 1975.  Based on my investigations to date, the already-extensive health problems experienced by these veterans and their offspring are still growing in number.  In connection with our reporting concerning Agent Orange, we have received emails from a number of Vietnam-era veterans who say they are dying.  It is possible that their health problems are due to exposure to Agent Orange and dioxin.  For these reasons, there is widespread, growing, and exceptional interest in the public about Agent Orange and dioxin, in which possible questions exist about the government's integrity which affect public confidence.  The public interest in timely and thorough reporting concerning this topic dictates immediate disclosure of the records requested in the First and Second FOIA Requests.  As for at least some veterans—those who report that they are dying—the failure to obtain the requested records on an expedited basis, at this point, could reasonably be expected to pose an imminent threat to the lives of those veterans.  *ProPublica* and *The Virginian-Pilot* will suffer irreparable injury without immediate disclosure of the records requested in the First and Second FOIA Requests because these Vietnam-era veterans whom we seek to research, interview, and/or report, as previously stated, are reaching advanced ages and some are dying, possibly due to Agent Orange.  If there is information contained in responsive records that might at least give clues about how to recognize and/or treat maladies caused by Agent Orange and dioxin, yet those records are not being timely disclosed, our publications will not be able to convey the information for the betterment of the interested public and be able to report with the benefit of insights from these dying veterans.

69.    I further believe that there is now an urgent and current debate concerning President-elect Trump's nomination, on January 11, 2017, of David J. Shulkin, MD, who is the current Under Secretary for Health at the VA, to be the next Secretary of Veterans Affairs.  The

Second FOIA Request specifically seeks records from the Under Secretary for Health. The scope of the First FOIA Request also covers certain communications to and from Dr. Shulkin, if any occurred. As Secretary, Dr. Shulkin would *de facto* lead the VA's ongoing response with respect to veterans exposed to Agent Orange and dioxin, including with respect to VA's commitment to conduct relevant research, provide compensation and other benefits, engage the Vietnam veterans' community in open and frank discourse, and adjust its policies as appropriate. It also needs scarcely to be mentioned that if he is confirmed, Dr. Shulkin will be the first non-veteran to be Secretary of Veterans Affairs. In view of the foregoing, there is an urgent and current debate concerning whether the Senate should confirm Dr. Shulkin's nomination and also how best to work with Dr. Shulkin based on his personal views. Without immediate disclosure of the records requested in the First and Second FOIA Requests, *ProPublica* and *The Virginian-Pilot* will suffer irreparable injury with respect to their ability to timely and thoroughly report, for the public benefit, on these urgent and current issues related to Agent Orange and dioxin. Even if confirmation occurs, an immediate understanding of Dr. Shulkin's views vis-à-vis Agent Orange and dioxin is important if the public is to impact the priorities he sets for the department during his first days in office. *ProPublica* and *The Virginian-Pilot* require immediate disclosure of the requested records concerning Dr. Shulkin in order to inform the public about his views on Agent Orange and dioxin, which to some extent are shrouded in mystery. The public interest in timely and thorough reporting concerning Dr. Shulkin dictates immediate disclosure of the records requested in the First and Second FOIA Requests.

70.     As a separate matter, in March 2016, the Institute of Medicine ("IOM") released its Tenth Biennial Update of the *Veterans and Agent Orange* (*VAO*) series, with particular attention to scientific studies published from September 30, 2012 through September 30, 2014, concerning

Agent Orange and dioxin.  That report provides a basis on which the Secretary of Veterans Affairs can decide to expand benefits, including compensation, for veterans with certain illnesses scientifically linked to Agent Orange.  *See, e.g.*, **Exhibit 33**.  It has now been over ten months since that report was released, yet the VA has not publicly provided any reaction to the findings therein.

71.    On November 4, 2016, in response to an inquiry that I made, the VA provided me with the following information in writing:

> *Has the VA technical work group completed their report on the IOM findings and delivered its report to the VA Secretary for his decision?  If so/if not, when?*
>
>> The VA technical work group is nearing completion of their work of preparing the draft VA response and draft action plan to the National Academy of Medicine (formerly IOM) Veterans & Agent Orange report, Volume 10.  The draft VA response packet is expected to reach the VA IOM Task Force in early December.  Thereafter it will be sent forward to the VA Secretary for review.
>
> *Given that the Obama administration expires Jan. 20, is it now likely that VA Secretary action on the March IOM report will not occur during this administration?*
>
>> Yes.  For this administration, the deadline for proposing new rules for potential new presumptions (of service connection) has passed and this will become work for the new administration to take to completion.

72.    Based on the aforementioned November 4, 2016 statements by the VA, it is clear to me that for several months now the VA has deferred action on finalizing its responses with respect to the IOM's ten-month old report, pending the new administration assuming control.  Nor has the VA actively pursued amendments to its regulations, in light of the IOM report, to expand the list of "presumptive diseases" associated with exposure to Agent Orange, which could trigger benefits for additional veterans and their survivors.  Given that a new administration is about to

take office on January 20, 2017, this period of inaction is about to end. I believe that there is an urgent and current debate concerning how the next administration should respond to the IOM's March 2016 report on Agent Orange. Without immediate disclosure of the records requested in the First and Second FOIA Requests, *ProPublica* and *The Virginian-Pilot* will suffer irreparable injury with respect to their ability to timely and thoroughly report, for the public benefit, on these urgent and current issues. *ProPublica* and *The Virginian-Pilot* require immediate disclosure of the requested records concerning Agent Orange and dioxin in order to inform the public about the VA's views on presumptive diseases and whether new ones should be imminently recognized through rulemaking. At least to some extent, these views are presently shrouded in mystery. The public interest in timely and thorough reporting concerning potential new "presumptive diseases" dictates immediate disclosure of the records requested in the First and Second FOIA Requests. There certainly is an urgency to inform the public concerning actual or alleged Federal government activity with respect to the IOM report.

73.     As an investigative journalist, and a member of the public, I do not consider either of the First and Second FOIA Requests to have been "promptly" processed by VA, let alone processed in an "expedited" manner.

74.     In my opinion, disclosure of the records sought in the First and Second FOIA Requests would serve the public interest and inform the public debate about Agent Orange and dioxin, and effects on veterans and/or their offspring, which is of vital and urgent public concern.

75.     Any further delay in the processing of the First and Second FOIA Requests will irreparably harm *ProPublica*'s and *The Virginian-Pilot*'s ability, and that of the public, to obtain in a timely fashion information vital to the current and ongoing debate surrounding whether to

amend VA's regulations, or institute rulemaking in connection with new VA regulations, regarding Agent Orange and dioxin, and its effects on veterans and/or their offspring.

76.     There is a compelling need for the First and Second FOIA Requests to be immediately processed, and responsive records to be immediately produced, given the urgency to inform the public concerning actual or alleged Federal government activity regarding Agent Orange and dioxin, and its effects on veterans and/or their offspring.

77.     *ProPublica*'s and *The Virginian-Pilot*'s considerable investments in labor, capital, and time in connection with our reporting on Agent Orange and dioxin, and effects on veterans and/or their offspring, will be irreparably injured without the requested injunctive relief.  Without immediate disclosure of the VA's records that we have sought, our reporting on this subject matter of considerable public interest is frustrated and opportunities to exploit our investments in this area are forever lost.

78.     Reporting on the news demands timeliness and completeness of information. Without prompt access to information about VA's consideration of Agent Orange and dioxin, and its effects on veterans and/or their offspring, as requested in the First and Second FOIA Requests, *ProPublica*'s and *The Virginian-Pilot*'s ability to engage in an urgent and current debate, through its reporting on this subject matter, will be irretrievably lost.

79.     I have tried to understand why the First and Second FOIA Requests seem to be caught in limbo such that their processing by VA lacks any target date for completion, reasonable or not.  To this end, I have sought to review VA's publicly available quarterly reports that provide statistics on backlogs of FOIA requests at each of the VA's components such as VHA and VBA. I was readily able to locate many but not all of those reports on VA's website.

80.     Attached hereto as **Exhibit 43** is a true and correct copy of "Department of Veterans Affairs, Freedom of Information Act (FOIA), Report for Fiscal Year 2015, Quarter 4," downloaded from http://www.oprm.va.gov/docs/Quarterly/VA-FY15Q4.pdf on January 16, 2017.

81.     Attached hereto as **Exhibit 44** is a true and correct copy of "Department of Veterans Affairs, Freedom of Information Act (FOIA), Report for Fiscal Year 2016, Quarter 1," downloaded from http://www.oprm.va.gov/docs/Quarterly/VA-FY16Q1.pdf on January 16, 2017.

82.     Attached hereto as **Exhibit 45** is a true and correct copy of "Department of Veterans Affairs, Freedom of Information Act (FOIA), Report for Fiscal Year 2016, Quarter 2," downloaded from http://www.oprm.va.gov/docs/Quarterly/VA-FY16Q2.pdf on January 16, 2017.

83.     Attached hereto as **Exhibit 46** is a true and correct copy of "Department of Veterans Affairs, Freedom of Information Act (FOIA), Report for Fiscal Year 2016, Quarter 3," downloaded from http://www.oprm.va.gov/docs/Quarterly/VA-FY16Q3.pdf on January 16, 2017.

84.     I understand that the federal government's Fiscal Year 2016 ran from October 1, 2015 through September 30, 2016.  While I found the VA's first three FOIA quarterly reports for FY16 on VA's website, I could not locate the report for FY16Q4.  As of January 16, 2017, links on VA's "FOIA Reports" web page to reports for FY16 Q4 in "ZIP" and "PDF" formats actually instead provided the reports for FY16 Quarter 3 ("Q3").  *See* **Exhibit 47** (screen prints showing how the links to reports for FY16**Q3** and FY16**Q4** are both for the same report only for **Q3**).

85.     The statistical information that I was seeking concerning backlogs is separately available on the internet from a different website, *FOIA.GOV*, administered by the Department of Justice.  Thus, attached hereto as **Exhibit 48** is a true and correct copy of a web page disclosing VA's "Quarterly FOIA Requests FY 2016" and also details for "Quarter 4 of Fiscal Year 2016," as downloaded from https://www.foia.gov/quarter.html?VA# on January 16, 2017.

86.     The data from *FOIA.GOV* concerning VA's backlogs confuses me.  Comparing the data for FY16Q3 and FY16Q4 provided in Exhibits 46 and 48, VBA's backlog of FOIA requests by the end of each of those quarters increased from 1418 to 2582 while VHA's backlog increased from 349 to 363.  A backlog increase in excess of 1,000 requests during consecutive quarters—as Exhibit 48 indicates for VBA—almost seems implausible.

87.     To try and better understand the FOIA request backlog situation at VA, in light of the information from *FOIA.GOV*, I contacted, *inter alia*, the FOIA Service at the VA Central Office ("VACO").  Attached hereto as **Exhibit 49** is a true and correct copy of an email chain with emails between Charles Ornstein and, *inter alia*, a Government Information Specialist ("GIS") in the FOIA Service at VACO.  In particular, by email dated January 17, 2017, I told the VACO FOIA Service that "I am unable to open the [FY16] Q4 FOIA report for the VA on your website" and that "[w]hen I click on it, it takes me to [FY16] Q3."  I also asked the VACO FOIA Service to confirm the accuracy of VBA's backlog data as listed in Exhibit 46 (FY16 Quarter 3) and Exhibit 47 (FY16 Quarter 4).  If the data was correct, I asked for an explanation for "why there was such a large increase in backlogged requests at VBA between the two consecutive quarters."  By email dated January 18, 2017, the GIS responded: "The VA FOIA 4th quarter report is attached.  The 3rd quarter report was inadvertently uploaded incorrectly.  The 4th quarter report will be uploaded correctly today.  The report uploaded on FOIA.gov for the VA 4th quarter is incorrect."  In addition, the GIS provided with her email response a copy of the "Department of Veterans Affairs, Freedom of Information Act (FOIA), Report for Fiscal Year 2016, Quarter 4," a true and correct copy of which is attached as **Exhibit 50**.  By subsequent email on January 18, 2017, I told the GIS that the report she emailed to me, Exhibit 50, "doesn't appear right" because [VHA's] backlog appears to have increased by a factor of 10 between consecutive quarters."  I asked, "Is

this correct?"  The GIS responded shortly thereafter, on January 18, 2017, that she "cannot explain the reporting numbers, unless the system was capturing the numbers incorrectly" and that she "ran the report for the 4th quarter and those were the numbers captured in the report."

88.     A comparison of the data for the third and fourth quarters of 2016 as provided in Exhibits 46 and 50 indicates that VBA's backlog of FOIA requests by the end of each of those quarters decreased from 2582 to 363 while VHA's backlog had almost a ten-fold increase from 363 to 3582.   This is quite confusing and utterly inconsistent with the information from *FOIA.GOV*.   I do not understand how it could be possible that VHA's backlog increased so drastically between two consecutive fiscal year quarters?   I also don't understand why the information on *FOIA.GOV* indicated VBA had the most outstanding requests to process in FY16Q4, while the report provided to me by the VACO FOIA Service indicated instead that VHA had that distinction.   I also do not understand how the number of backlogged requests at VA, department-wide, was underestimated by precisely 1,000 in the *FOIA.GOV* statistics.

89.     In sum, VA's backlog data for FY16Q4 in Exhibit 50 (provided by the VACO FOIA Office) is very inconsistent with the data for the same quarter in Exhibit 48 (from *FOIA.GOV*).   The only seemingly reliable *trend* evident from comparing FY16Q3 and FY16Q4 is this: Department-wide, VA's overall backlog of FOIA requests increased substantially between the ends of FY16Q3 and FY16Q4 (an increase of either 62% or 111% depending on whether data is used from Exhibit 48 or Exhibit 50).

90.     I am unaware of the reason for the discrepancies in the data presented in Exhibits 48 and 50.  Moreover, the VACO FOIA Service neither explained the discrepancies in that data nor explained why either VBA or VHA would have a massive increase in its backlog for consecutive FY16 quarters, Q3 and Q4 as indicated by the data.

91.    A table summarizing the data in **Exhibits 43-46, 48 & 50** concerning the "backlog" of FOIA requests at VA— department-wide *and* with respect to its relevant components handling the First and Second FOIA Requests—is as follows:

| Department / Component | Requests Backlogged as of End of Reporting Quarter | | | | | |
|---|---|---|---|---|---|---|
| | FY15Q4 (Exh. 43) | FY16Q1 (Exh. 44) | FY16Q2 (Exh. 45) | FY16Q3 (Exh. 46) | FY16Q4 (Exh. 48) | FY16Q4 (Exh. 50) |
| VA dep't-wide | 954 | 1117 | 1270 | 2032 | 3296 | 4296 |
| VHA | 329 | 325 | 334 | 349 | 363 | 3582 |
| VBA | 379 | 560 | 683 | 1418 | 2582 | 363 |
| OCLA | 14 | 17 | 8 | 3 | 6 | 6 |
| OPP | 2 | 2 | 4 | 3 | 3 | 3 |
| OIG | 0 | 0 | 1 | 1 | 2 | 2 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of January 2017 in New York, New York.

Charles Ornstein